LAW OFFICES OF
WALKUP, MELODIA, KELLY & SCHOENBERGER
A PROFESSIONAL CORPORATION

650 CALIFORNIA STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94108-2615
T: (415) 981-7210 · F: (415) 391-6965

RICHARD H. SCHOENBERGER (State Bar #122190)
rschoenberger@walkuplawoffice.com
VALERIE N. ROSE (State Bar #272566)
vrose@walkuplawoffice.com
KELLY L. GANCI (State Bar #335658)
kganci@walkuplawoffice.com
**ATTORNEYS FOR THE ESTATE OF MANUEL OCAMPO**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| JOSEPH ONTIVEROS as successor in interest to THE ESTATE OF MANUEL OCAMPO<br><br>Plaintiff<br><br>v.<br><br>CINDY BLACK and DOES ONE through FIFTY, inclusive,<br><br>Defendants. | Case No. 3:25-cv-10935-CRB<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff alleges against Defendants as follows:

1.     This is a civil rights action arising from Defendants' violation of decedent Manuel Ocampo's constitutional rights while in custody at Napa State Hospital, resulting in his death on November 19, 2024.

2.     This action is brought pursuant to 42 U.S.C. §1983 for violations of Plaintiff Estate of Manuel Ocampo's Eighth and Fourteenth Amendment rights afforded to him under the United States Constitution, rights which at all times herein were, and are, clearly established and well settled. The Eighth Amendment

1
FIRST AMENDED COMPLAINT FOR DAMAGES

provides Plaintiff the right to be free from cruel and unusual punishment, including the right to be protected from harm by other inmates. The Fourteenth Amendment provides Plaintiff the right to be free from state-created danger.

3.      This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. The acts and omissions giving rise to this action occurred in the city of Napa, County of Napa, State of California. Venue is therefore proper in the United States District Court for the Northern District of California, San Francisco.

4.      All administrative remedies have been exhausted. In compliance with California Government Code § 910, Plaintiff filed administrative claims for damages under the California Tort Claims Act with the State of California, who let the claim expire on or about July 13, 2025.

5.      At all relevant times, decedent Manuel Ocampo was a patient who was criminally committed to Napa State Hospital following a not guilty by reason of insanity finding. As such, he is a vulnerable individual requiring consistent care and monitoring for his safety.

6.      Joseph Ontiveros is the brother and surviving heir of decedent Manuel Ocampo and brings this action on behalf of Plaintiff the Estate of Manuel Ocampo. Plaintiff the Estate of Manuel Ocampo seeks survival damages suffered before his death in accordance with Code Civ. Proc. §377.30. A successor-in-interest declaration is filed concurrently herewith.

7.      Napa State Hospital is and was a duly organized public entity existing under the laws of the State of California. California Department of State Hospitals (hereinafter DSH) owns, operates, and controls Napa State Hospital. Napa State Hospital is a psychiatric commitment facility, housing approximately 1,250 patients. Approximately 80-85% of Napa State Hospital patients have a criminal commitment following the commission of a felony. Criminal defendants found not guilty by reason of insanity or found incompetent to stand trial, among other things, are housed at this facility.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

2

FIRST AMENDED COMPLAINT FOR DAMAGES

8. Defendants Cindy Black, DOES 1 through 50, and each of them, are aware of the risks of harm that could come to patients and staff when caring for a patient population of the type housed at Napa State Hospital. Napa State Hospital has a long history of death and injury to its staff and patients in its care at the hands of other patients. Upon information and belief, Plaintiff alleges that there are between 1,800 to 2,000 patient-committed physical assaults per year at Napa State Hospital according to figures released by DSH. Taking action to protect the safety and security of patients and staff are paramount.

9. At all relevant times, Defendant Cindy Black was the acting Executive Director of Napa State Hospital with supervisory authority over all employees at Napa State Hospital, including specifically DOES 11 through 40. At all relevant times, Defendants DOES 1 through 10 were employees of DSH at Napa State Hospital also in a supervisory capacity with supervisorial authority over DOES 11 through 40. Plaintiff brings this action against Defendant Cindy Black and DOES 1 through 10 in their individual capacities, not in their official capacities.

10. At all relevant times, DSH also employed DOES 11-40 at Napa State Hospital. Defendant DOES 11 through 30 were employed as hospital security officers, state or county deputies, correctional officers, or otherwise in a capacity to secure the facility and ensure the health and safety of the criminally committed patients in the custody of Napa State Hospital, including specifically the rooms and units of Manuel Ocampo and Jerome Wilson. DOES 31 through 40 were employed as clinical staff, including psychiatric, psychological, or other hospital staff responsible for ensuring the health and safety of criminally committed patients in the custody of Napa State Hospital, including specifically the health and wellbeing of Manuel Ocampo and Jerome Wilson. At all relevant times, Defendants DOES 11 through 40 were duly authorized employees and agents of DSH and Napa State Hospital and were acting under color of law and within the course and scope of their duties as mentioned above. In doing the acts and failing to act as hereinafter described,

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

3
FIRST AMENDED COMPLAINT FOR DAMAGES

Defendants 11 through 40 were acting on the implied and actual permission and consent of DSH. Plaintiff brings this action against them in their individual capacities, not in their official capacities.

11. The true names, capacities, or involvement, whether individual, corporate, governmental, or associate of the Defendants named herein as DOE, are unknown to Plaintiff who therefore sues said Defendants by such fictitious names. Plaintiff prays leave to amend this complaint to show their true names and capacities, when the same have been finally determined. At all times mentioned herein, each and every Defendant was the employee or agent of each and every other Defendants.

12. Patients at Napa State Hospital are placed in various housing units according to their classification. Upon information and belief, Plaintiff alleges that in the weeks and months preceding November 19, 2024, DSH temporarily relocated patients due to repairs in some of the housing units. Mr. Ocampo was one of the patients reassigned a different room, within his same housing unit. Another patient, Jerome Darnell Wilson was reassigned to Mr. Ocampo's previous room. Upon information and belief, Plaintiff alleges that Mr. Wilson was classified as a violent patient and that Mr. Wilson and Mr. Ocampo were unknown to each other at the time of the events giving rise to this action.

13. On or about the evening of November 19, 2024, the housing unit and patient room Mr. Ocampo resided in was not properly secured and left unlocked by DSH staff, including DOES 11 through 40 such that patients, specifically including those patients who have been criminally committed, could exit their rooms at any time without supervision.

14. At said time and place, the exterior and interior of Mr. Ocampo's housing unit was not properly supervised, with little to no staff members patrolling the housing unit such that patients could roam free without supervision or detection by staff. On information and belief, the cameras used to monitor the area were not

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

4
FIRST AMENDED COMPLAINT FOR DAMAGES

working, and had not been working for some time prior to the evening of November 19, 2024. The door to Mr. Wilson's room was similarly left unlocked so that anyone could enter and exit without supervision or detection.

15.     As a result, Mr. Ocampo was permitted to leave his room undiscovered and undetected by DOES 11 through 40 in the middle of the night after his room was not secured and left unlocked. Upon information and belief, Plaintiff alleges that Mr. Ocampo became confused and wandered into his old room (inhabited by Mr. Wilson) without DOES 11 through 40 discovering that he had escaped his room, was wandering the hallway at night, or was entering the room of Mr. Wilson. No employee of DSH discovered Mr. Ocampo on his route from his room to Mr. Wilson's room and Mr. Ocampo was permitted to open his patient room door and exit without discovery or detainment by DOES 11 through 40. Mr. Ocampo was eventually found face down and unresponsive in Mr. Wilson's room after Mr. Wilson strangled him to death after Mr. Ocampo entered his room. Mr. Wilson was charged with Mr. Ocampo's murder and was found not guilty by reason of insanity, thus returning to the custody of DSH. Plaintiff alleges upon information and belief that Defendants Cindy Black and DOES 1 through 10 knew of the conduct of DOES 11 through 40 in failing to secure the patient doors and failing to supervise the housing units.

### FIRST CAUSE OF ACTION
### Violation of Eighth and Fourteenth Amendment –
### 42 U.S.C. §1983 – DOES 11 through 40

16.     Plaintiff realleges each and every paragraph in this complaint as if fully set forth herein.

17.     Defendants DOES 11 through 40, acting under color of law and exercising their power as government actors, engaged in conduct which violated Plaintiff's constitutional rights under the Eighth and Fourteenth Amendments, including but not limited to intentionally failing to secure and/or lock the housing unit door and patient rooms where Mr. Ocampo and Mr. Wilson were housed during

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

5

nighttime hours, leaving them unsecure and unsafe and failing to supervise the interior and exterior of the housing units overnight where Mr. Ocampo and Mr. Wilson resided such that Mr. Ocampo was allowed to leave his room undetected and enter Mr. Wilson's room without discovery. In doing the acts and failing to act as described herein, Defendants DOES 11 through 40 acted on the implied and actual permission and consent of Defendants Cindy Black and DOES 1 through 10.

18. Defendants, and each of them, were aware of the risks posed to criminally committed patients, including specifically Mr. Ocampo, if patients are permitted to roam at night without camera surveillance, and without secured rooms and unit doors. Despite such knowledge, Defendants failed to act with deliberate indifference to the safety and security of patients, including Mr. Ocampo. DOES 11 through 40 acted with deliberate indifference to the known and obvious danger associated with allowing patients to roam the hallways at night without supervision and the danger associated with failing to lock or secure the unit doors or patient rooms of the criminally committed. Defendants further knew that if they chose not to properly surveil the area with cameras or secure the housing units and patient rooms, and chose not to supervise the housing units at night, patients in their care, including decedent, would be at high risk of injury and death. This "protracted failure to even care" constitutes conduct which shocks the conscience. See *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998). Defendants' conduct in this regard constituted affirmative acts which placed decedent and other patients in the care and custody of DSH in actual, particularized danger by exposing decedent to a danger he would have not otherwise faced.

19. Defendants' affirmative conduct caused the death of Manuel Ocampo. If patient rooms and housing unit doors were properly secured during nighttime hours and if housing units were properly supervised and surveilled, Mr. Ocampo would have been unable to leave his room in the middle of the night and wander into his old assigned room where Mr. Wilson was housed. In acting in this manner, Defendants,

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

6

FIRST AMENDED COMPLAINT FOR DAMAGES

and each of them, recognized the unreasonable risk of harm to Mr. Ocampo and actually intended to expose him to those risks without regard of the consequences. The conduct of Defendants, and each of them, lacked any relationship to health, safety, and welfare, was a substantial departure from generally accepted procedures, had no legitimate correctional, health, or safety objective. Defendants' conduct was wanton, malicious, and was undertaken with deliberate indifference and disregard of what they knew was a high risk to decedent.

20.    Defendants' conduct violated Plaintiff's Eighth and Fourteenth Amendment rights as alleged herein, and constituted the actual cause of Plaintiff's injuries and suffering. But for Defendants' conduct, Mr. Ocampo would not have been able or permitted to leave his room overnight, would have been discovered prior to entry into Mr. Wilson's room, and would have been unable to open Mr. Wilson's room door. By reason of the conduct of Defendants DOES 11 through 40, Plaintiff suffered prior to his death. The conduct of Defendants, and each of them, are affirmatively linked to and were a significantly influential force behind Plaintiff's injuries. Defendants' failure in this regard is so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused the ultimate injury.

21.    By reason of the Defendants' conduct, and as a direct, legal, and proximate result of the culpability and fault of the Defendants, and each of them, decedent Manuel Ocampo incurred general damages for pain, mental suffering, emotional suffering, emotional distress, loss of enjoyment of life, physical impairment, physical inconvenience, grief, anxiety, despair and humiliation before his death.

22.    By reason of the Defendants' conduct, Plaintiff Estate of Manuel Ocampo has sustained general (non-economic) damages in a sum in excess of the minimum jurisdictional limits of this court.

/ / /

/ / /

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

7

FIRST AMENDED COMPLAINT FOR DAMAGES

**SECOND CAUSE OF ACTION**
**Violation of Eighth and Fourteenth Amendment –**
**Supervisory Liability 42 U.S.C. §1983 – Defendant Cindy Black**
**and DOES 1 through 10**

23.    Plaintiff realleges each and every paragraph in this complaint as if fully set forth herein.

24.    Defendants Cindy Black and DOES 1 through 10 had direct supervisory authority over DOES 11 through 40. As alleged herein, the conduct of DOES 11 through 40 deprived Plaintiff of his Eighth and Fourteenth Amendment rights under the United States Constitution, and through personal knowledge of and participation in the constitutional violations alleged herein, Defendants Cindy Black and DOES 1 through 10 are also liable.

25.    Defendants Cindy Black and DOES 1 through 10 had actual knowledge that DOES 11 through 40 failed to secure and lock patient room doors and failed to supervise or appropriately surveil with functioning cameras the housing units where Mr. Ocampo and Mr. Wilson resided and knew or reasonably should have known that the conduct of DOES 11 through 40 would result in the deprivation of Plaintiff's rights but failed to act to prevent DOES 11 through 40 from engaging in this conduct.

26.    Upon information and belief, Plaintiff alleges that Defendant Cindy Black and DOES 1 through 10 directed DOES 11 through 40 to engage in this conduct. Defendants Cindy Black and DOES 1 through 10 also knowingly refused to terminate the misconduct of subordinates DOES 11 through 40 as alleged herein, despite actual knowledge of the risks associated with failing to appropriately surveil patients, secure patient doors and supervise the housing units of the criminally committed. Defendants made an intentional decision with respect to the conditions under which decedent was confined, specifically regarding the security and supervision of housing units. By failing to act to prevent their subordinates from violating Mr. Ocampo's constitutional rights after becoming aware of it, Defendants Cindy Black and DOES 1 through 10 ratified the behavior of DOES 11 through 40.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

8

Defendants directed, encouraged, and this behavior with deliberate indifference to the fundamental rights individuals have, including decedent, and despite the high likelihood of harm or death to patients as a result.

27. At all times herein mentioned, Defendants, and each of them, knew that patients, including decedent, were at substantial risk of serious harm if patient rooms and unit doors were not properly secured or surveilled during nighttime hours and if housing units were not properly supervised such that patients could roam the housing unit hallways. Without proper housing security during nighttime hours as alleged herein, decedent faced a substantial risk of serious harm which was at all times known to Defendants Cindy Black and DOES 1 through 10. Defendants, as supervising and managerial employees, acted with reckless and deliberate indifference to the rights and safety of Plaintiff. Said Defendants also acted with deliberate indifference to the foreseeable effects and consequences of their subordinates' misconduct with respect to the constitutional rights of decedent and other individuals similarly situated.

28. The actions of Defendants Cindy Black and DOES 1 through 10 was so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused the injury. Because Defendants had supervisory authority over DOES 11 through 40 and knew of the constitutional deprivations they were perpetrating, Defendants could have prevented their subordinates from violating Plaintiff's rights. Had Cindy Black and DOES 1 through 10 stopped, disciplined, or otherwise prevented DOES 11 through 40 from leaving patient rooms unlocked and unsecured, and from leaving housing units unsupervised, Plaintiff would not have been able to leave his room, roam the hall, and enter the room of another patient undetected. He would not have suffered prior to his death.

29. By reason of Defendants' conduct, and as a direct, legal, and proximate result of the culpability and fault of Defendants, and each of them, decedent Manual Ocampo suffered and sustained the damages as alleged herein.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

9
FIRST AMENDED COMPLAINT FOR DAMAGES

## THIRD CAUSE OF ACTION
**Survival Action vs. all Defendants**

30.     Plaintiff realleges each and every paragraph in this complaint as if fully set forth herein.

31.     Joseph Ontiveros is the successor in interest to Plaintiff Estate of Manuel Ocampo and brings this action on its behalf.

32.     By reason of the Defendants' conduct, and as a direct, legal, and proximate result of the culpability and fault of the Defendants, and each of them, decedent Manual Ocampo incurred general damages for pain, mental suffering, emotional suffering, emotional distress, loss of enjoyment of life, physical impairment, physical inconvenience, grief, anxiety, despair and humiliation before his death.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

10
FIRST AMENDED COMPLAINT FOR DAMAGES

33.    By reason of the Defendants' conduct, Estate of Manuel Ocampo has sustained general (non-economic) damages in a sum in excess of the minimum jurisdictional limits of this court.

WHEREFORE, Plaintiff respectfully requests the following relief against each and every Defendant herein, jointly and severally:

a.    Compensatory damages in an amount according to proof;

b.    All other damages, penalties, costs, and attorneys' fees as permitted by law; and

c.    Such other and further relief as this Court may deem proper.

Dated:  February 18, 2026        WALKUP, MELODIA, KELLY & SCHOENBERGER

By: _____
RICHARD H. SCHOENBERGER
VALERIE N. ROSE
KELLY L. GANCI
Attorneys for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial.

Dated: February 18, 2026        WALKUP, MELODIA, KELLY & SCHOENBERGER

By: _____
RICHARD H. SCHOENBERGER
VALERIE N. ROSE
KELLY L. GANCI
Attorneys for Plaintiff

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

11
FIRST AMENDED COMPLAINT FOR DAMAGES