# EXHIBIT 1

LAW OFFICES OF
WALKUP, MELODIA, KELLY & SCHOENBERGER
A PROFESSIONAL CORPORATION

650 CALIFORNIA STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94108-2615
T: (415) 981-7210 · F: (415) 391-6965

RICHARD H. SCHOENBERGER (State Bar #122190)
rschoenberger@walkuplawoffice.com
VALERIE N. ROSE (State Bar #272566)
vrose@walkuplawoffice.com
KELLY L. GANCI (State Bar #335658)
kganci@walkuplawoffice.com
**ATTORNEYS FOR THE ESTATE OF MANUEL OCAMPO**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| JOSEPH ONTIVEROS as successor in interest to THE ESTATE OF MANUEL OCAMPO<br><br>Plaintiff<br><br>v.<br><br>CINDY BLACK, SHERRY BIGNOL, SHANE SEEFELDT, and DOES ONE through FIFTY, inclusive,<br><br>Defendants. | Case No. 3:25-cv-10935-CRB<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff alleges against Defendants as follows:

1.    This is a civil rights action arising from Defendants' violation of decedent Manuel Ocampo's constitutional rights while in custody at Napa State Hospital, resulting in his death on November 19, 2024.

2.    This action is brought pursuant to 42 U.S.C. §1983 for violations of Plaintiff Estate of Manuel Ocampo's Fourteenth Amendment right afforded to him under the United States Constitution, rights which at all times herein was, and is, clearly established and well settled. The Fourteenth Amendment provides Manuel

1
SECOND AMENDED COMPLAINT FOR DAMAGES

Ocampo the right to be free from state-created danger.

3. This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. The acts and omissions giving rise to this action occurred in the city of Napa, County of Napa, State of California. Venue is therefore proper in the United States District Court for the Northern District of California, San Francisco.

4. All administrative remedies have been exhausted. In compliance with California Government Code § 910, Plaintiff filed administrative claims for damages under the California Tort Claims Act with the State of California, who let the claim expire on or about July 13, 2025.

5. At all relevant times, decedent Manuel Ocampo was a patient who was criminally committed to Napa State Hospital following a not guilty by reason of insanity finding. As such, he is a vulnerable individual requiring consistent care and monitoring for his safety.

6. Joseph Ontiveros is the brother and surviving heir of decedent Manuel Ocampo and brings this action on behalf of Plaintiff the Estate of Manuel Ocampo. Plaintiff the Estate of Manuel Ocampo seeks survival damages suffered before his death in accordance with Code Civ. Proc. §377.30. A successor-in-interest declaration is filed concurrently herewith.

7. Napa State Hospital is and was a duly organized public entity existing under the laws of the State of California. California Department of State Hospitals (hereinafter DSH) owns, operates, and controls Napa State Hospital. Napa State Hospital is a psychiatric commitment facility, housing approximately 1,250 patients. Approximately 80-85% of Napa State Hospital patients have a criminal commitment following the commission of a felony. Criminal defendants found not guilty by reason of insanity or found incompetent to stand trial, among other things, are housed at this facility.

8. Defendants, and each of them, are aware of the risks of harm that could come to patients and staff when caring for a patient population of the type housed at

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

2
SECOND AMENDED COMPLAINT FOR DAMAGES

Napa State Hospital. Napa State Hospital has a long history of death and injury to its staff and patients in its care at the hands of other patients. Upon information and belief, Plaintiff alleges that there are between 1,800 to 2,000 patient-committed physical assaults per year at Napa State Hospital according to figures released by DSH. Taking action to protect the safety and security of patients and staff are paramount.

9.    At all relevant times, Defendant Cindy Black was the acting Executive Director of Napa State Hospital with supervisory authority over all employees at Napa State Hospital, including specifically Defendants Sherry Bignol, Shane Seefeldt,and DOES 11 through 40. At all relevant times, Defendants DOES 1 through 10 were employees of DSH at Napa State Hospital also in a supervisory capacity with supervisorial authority over DOES 11 through 40. Plaintiff brings this action against all Defendants in their individual capacities, not in their official capacities.

10.    At all relevant times, DSH also employed DOES 11-40 at Napa State Hospital. Defendants Sherry Bignol, Shane Seefeldt, and DOES 11 through 40 were employed as clinical staff, including psychiatric, nursing psychological, or other hospital staff responsible for ensuring the health and safety of criminally committed patients in the custody of Napa State Hospital, including specifically the health and wellbeing of Manuel Ocampo and Jerome Wilson. At all relevant times, Defendants, and each of them, were duly authorized employees and agents of DSH and Napa State Hospital and were acting under color of law and within the course and scope of their duties as mentioned above. In doing the acts and failing to act as hereinafter described, Defendants 11 through 40 were acting on the implied and actual permission and consent of DSH. Plaintiff brings this action against them in their individual capacities, not in their official capacities.

11.    The true names, capacities, or involvement, whether individual, corporate, governmental, or associate of the Defendants named herein as DOE, are

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

3
SECOND AMENDED COMPLAINT FOR DAMAGES

unknown to Plaintiff as of the filing of this complaint, who therefore sues said Defendants by such fictitious names. Plaintiff prays leave to amend this complaint to show their true names and capacities, when the same have been finally determined. At all times mentioned herein, each and every Defendant was the employee, supervisor, or agent of each and every other Defendants.

12.     At all relevant times herein, Defendant Sherry Bignol was a nurse employed at Napa State Hospital, whose responsibilities included managing the health and safety of patients in her care, supervising the patients and the housing unit, and performing checks every 30 minutes approximately to ensure each patient was safe and accounted for. At all relevant times herein, Defendant Shane Seefeldt was a psychiatric technician employed at Napa State Hospital, whose responsibilities also included managing the health and safety of patients in his care, supervising the patients and the housing unit, and performing checks every 30 minutes approximately to ensure each patient was safe and accounted for. Upon information and belief, Plaintiff alleges that Defendants Sherry Bignol and Shane Seefeldt were staffed in the housing unit where decedent Manuel Ocampo and Jerome Wilson were housed in on November 19, 2024.

13.     The patient checks conducted by staff members of Napa State Hospital, including Defendants, were pursuant to policy promulgated by DSH for the purpose of ensuring the health and safety of committed patients at Napa State Hospital. All staff, including Defendants, were responsible for following the policies.

14.     Patients at Napa State Hospital are placed in various housing units according to their classification. Upon information and belief, Plaintiff alleges that in the weeks preceding November 19, 2024, DSH temporarily relocated patients due to construction in some of the housing units. Mr. Ocampo was one of the patients reassigned a different room, within his same housing unit. Another patient, Jerome Darnell Wilson was reassigned to Mr. Ocampo's previous room. At all relevant times, Defendants, and each of them, knew that Mr. Wilson was classified as a violent

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

4
SECOND AMENDED COMPLAINT FOR DAMAGES

patient. Upon information and belief, Plaintiff alleges that Mr. Wilson had previously assaulted a staff member, had a traumatic brain injury that made him prone to violent outbursts, and had a violent criminal record—all of which was known to Defendants.

15.    Defendants, and each of them, also had notice that Mr. Ocampo was a violent patient. Because of his known violence, Mr. Ocampo required two nurses to escort him out of the housing unit.

16.    After Mr. Ocampo and Mr. Wilson moved patient rooms, multiple outbursts took place between Mr. Ocampo and Mr. Wilson in the days leading up to Mr. Wilson's killing of Mr. Ocampo on November 19, 2024. On one occasion, Mr. Ocampo went into Mr. Wilson's room (Mr. Ocampo's old room) and began throwing Mr. Wilson's belongings out of the room. Staff had to use force to relocate Mr. Ocampo back to his new room. Just days later, Mr. Ocampo again tried to remove Mr. Wilson's belongings and complained to staff that he was in Mr. Wilson's room trying to remove his things. Upon information and belief, Plaintiff alleges that Defendants, and each of them, had actual knowledge of these events between Mr. Ocampo and Mr. Wilson.

17.    Defendants, and each of them, took no action in response to learning of these events between Mr. Ocampo and Mr. Wilson. Defendants, and each of them, failed to detain, relocate, supervise, or monitor Mr. Ocampo or Mr. Wilson despite knowledge of the outbursts between them involving Mr. Ocampo's old room and despite knowledge that Mr. Ocampo had gone into Mr. Wilson's room without Mr. Wilson's consent.

18.    On or about the evening of November 19, 2024, Mr. Ocampo entered Mr. Wilson's room a third time. The housing unit and patient room Mr. Ocampo resided in was not properly secured and left unlocked by DSH staff, including Defendants Sherry Bignol, Shane Seefeldt, and DOES 11 through 40 such that patients, specifically including those patients who have been criminally committed, could exit

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

5

SECOND AMENDED COMPLAINT FOR DAMAGES

their rooms at any time without supervision.

19.    At said time and place, the exterior and interior of Mr. Ocampo's housing unit was not properly supervised, with little to no staff members patrolling the housing unit such that patients could roam free without supervision or detection by staff. On information and belief, the cameras used to monitor the area were not working, and had not been working for some time prior to the evening of November 19, 2024. The door to Mr. Wilson's room was similarly left unlocked so that anyone could enter and exit without supervision or detection.

20.    As a result, Mr. Ocampo was permitted to leave his room undiscovered and undetected by Defendants Sherry Bignol, Shane Seefeldt, and DOES 11 through 40.Mr. Ocampo again wandered into his old room (inhabited by Mr. Wilson) without Defendants Sherry Bignol, Shane Seefeldt, and DOES 11 through 40 discovering that he had escaped his room, was wandering the hallway at night without restriction, or was entering the room of Mr. Wilson. No Defendant discovered Mr. Ocampo on his route from his room to Mr. Wilson's room and Mr. Ocampo was permitted to open his patient room door and exit without discovery or detainment by any Defendant. Mr. Wilson strangled Mr. Ocampo to death after Mr. Ocampo entered his room.

21.    Defendants, and each of them, were required to conduct safety checks of the housing units every 30 minutes to ensure the health and safety of patients. Upon information and belief, Plaintiff alleges that Defendant Sherry Bignol conducted a check around 11:50 pm but did not conduct adequate checks thereafter and did not notice Mr. Ocampo leave his room and enter Mr. Wilson's room. Upon information and belief, Plaintiff alleges that Shane Seefeldt was stationed approximately 25 feet from the rooms of Mr. Ocampo and Mr. Wilson, which were next to each other diagonally. Defendant Seefeldt never saw Mr. Ocampo leave his room and never noticed he was gone.

22.    Upon information and belief, after Mr. Ocampo entered Mr. Wilson's room, there was a loud altercation for several minutes. Mr. Ocampo was then

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

6
SECOND AMENDED COMPLAINT FOR DAMAGES

strangled by Mr. Wilson while Mr. Ocampo struggled. No Defendant noticed or responded to this occurrence in the housing unit that they were responsible for supervising. Upon information and belief, Defendant Sherry Bignol conducted a check at approximately 1:00 am where she first noticed that Mr. Ocampo was not in his room. Defendant Seefeldt only noticed Mr. Ocampo was not in his room when Defendant Bignol screamed after coming upon Mr. Ocampo face down and unresponsive in Mr. Wilson's room. Mr. Wilson was charged with Mr. Ocampo's murder and was returned to the custody of DSH.

### FIRST CAUSE OF ACTION
### Violation of Fourteenth Amendment –
### 42 U.S.C. §1983 – Sherry Bignol, Shane Seefeldt,
### and DOES 11 through 40

23.     Plaintiff realleges each and every paragraph in this complaint as if fully set forth herein.

24.     Defendants Sherry Bignol, Shane Seefeldt, and DOES 11 through 40, acting under color of law and exercising their power as government actors acted with conscious indifference and failed to take adequate steps in accordance with professional standards to prevent harm from occurring, which violated Plaintiff's clearly established constitutional rights under the Fourteenth Amendments, including but not limited to Mr. Ocampo's right to personal security and reasonably safe conditions of confinement, allowing Mr. Ocampo and Mr. Wilson to remain in the unit unsupervised during the night in violation of policies requiring safety checks every 30 minutes, allowing Mr. Ocampo to wonder the hall and enter Mr. Wilson's room without supervision or restriction. In doing the acts and failing to act as described herein, Defendants and each of them acted on the implied and actual permission and consent of Defendants Cindy Black and DOES 1 through 10.

25.     Defendants, and each of them, were aware of the risks posed to criminally committed patients, including specifically Mr. Ocampo, if patients are

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

7

SECOND AMENDED COMPLAINT FOR DAMAGES

permitted to roam at night without appropriate surveillance and supervision, and without secured rooms and unit doors. Defendants, and each of them, were further on notice of the specific risks of Mr. Ocampo wandering into Mr. Wilson's room and throwing his belongings as well as the violent histories of both Mr. Wilson and Mr. Ocampo. Despite such knowledge, Defendants failed to act, with deliberate indifference to the safety and security of patients, including Mr. Ocampo. Defendants, and each of them, acted with deliberate indifference to the known and obvious danger associated with allowing patients to roam the hallways at night without supervision. Defendants further knew that if they chose not to properly surveil the area with cameras, failed to conduct adequate safety checks of patient rooms, failed to supervise and secure the housing units and patient rooms, patients in their care, including decedent, would be at high risk of injury and death. Defendants failed to detain Mr. Ocampo or Mr. Wilson such that they could not leave their rooms overnight, failed to provide adequate supervision to prevent a known risk of Mr. Ocampo eloping to Mr. Wilson's room to disturb him, and failed to consider both patients' violent histories when supervising them on the evening of November 19, 2024. This "protracted failure to even care" constitutes conduct which shocks the conscience. See *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998). Defendants' conduct in this regard constituted affirmative acts which placed decedent and other patients in the care and custody of DSH in actual, particularized danger by exposing decedent to a danger he would have not otherwise faced.

26.     Defendants' affirmative conduct caused the death of Manuel Ocampo. If patient rooms and housing unit doors were properly secured during nighttime hours and if housing units were properly supervised and surveilled, Mr. Ocampo would have been unable to leave his room in the middle of the night and wander into his old assigned room where Mr. Wilson was housed. Had Defendants supervised the housing unit adequately or conducted proper checks in accordance with policies, Mr. Ocampo would have been discovered before Mr. Wilson strangled him to death. In

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

8
SECOND AMENDED COMPLAINT FOR DAMAGES

acting in this manner, Defendants, and each of them, recognized the unreasonable risk of harm to Mr. Ocampo and actually intended to expose him to those risks without regard of the consequences. The conduct of Defendants, and each of them, lacked any relationship to health, safety, and welfare, was a substantial departure from generally accepted procedures, had no legitimate correctional, health, or safety objective. Defendants' conduct was wanton, malicious, and was undertaken with deliberate indifference and disregard of what they knew was a high risk to decedent.

27.    Defendants' conduct violated Plaintiff's Fourteenth Amendment rights as alleged herein, and constituted the actual cause of Plaintiff's injuries and suffering. But for Defendants' conduct, Mr. Ocampo would not have been able or permitted to leave his room overnight, would have been discovered prior to entry into Mr. Wilson's room, and would have been unable to open Mr. Wilson's room door. By reason of the conduct of Defendants, Plaintiff suffered prior to his death. The conduct of Defendants, and each of them, are affirmatively linked to and were a significantly influential force behind Plaintiff's injuries. Defendants' failure in this regard is so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused the ultimate injury.

28.    By reason of the Defendants' conduct, and as a direct, legal, and proximate result of the culpability and fault of the Defendants, and each of them, decedent Manuel Ocampo incurred general damages for pain, mental suffering, emotional suffering, emotional distress, loss of enjoyment of life, physical impairment, physical inconvenience, grief, anxiety, despair and humiliation before his death.

29.    By reason of the Defendants' conduct, Plaintiff Estate of Manuel Ocampo has sustained general (non-economic) damages in a sum in excess of the minimum jurisdictional limits of this court.

/ / /

/ / /

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

**SECOND CAUSE OF ACTION**
**Violation of Fourteenth Amendment –**
**Supervisory Liability 42 U.S.C. §1983 – Defendant Cindy Black**
**and DOES 1 through 10**

30.    Plaintiff realleges each and every paragraph in this complaint as if fully set forth herein.

31.    Defendants Cindy Black and DOES 1 through 10 had direct supervisory authority over Sherry Bignol, Shane Seefeldt, and DOES 11 through 40. As alleged herein, the conduct of Sherry Bignol, Shane Seefeldt, and DOES 11 through 40 deprived Plaintiff of his Fourteenth Amendment rights under the United States Constitution, and through personal knowledge of and participation in the constitutional violations alleged herein, Defendants Cindy Black and DOES 1 through 10 are also liable.

32.    Defendants Cindy Black and DOES 1 through 10 had actual knowledge that Sherry Bignol, Shane Seefeldt, and DOES 11 through 40 failed to  supervise or appropriately surveil with functioning cameras and/or timely patient checks the housing units where Mr. Ocampo and Mr. Wilson resided and knew or reasonably should have known that the conduct of Sherry Bignol, Shane Seefeldt, and DOES 11 through 40 would result in the deprivation of Plaintiff's rights but failed to act to prevent Sherry Bignol, Shane Seefeldt, and DOES 11 through 40 from engaging in this conduct. Defendant Cindy Black and DOES 1 through 10 further knew of Mr. Ocampo and Mr. Wilson's recent outbursts, Mr. Ocampo's recent history of entering Mr. Wilson's room, and their violent histories. Defendant Cindy Black and DOES 1 through 10 also knew that Defendants Sherry Bignol, Shane Seefeldt, and DOES 11 through 40 routinely failed to conduct adequate safety checks.

33.    Upon information and belief, Plaintiff alleges that Defendant Cindy Black and DOES 1 through 10 directed Sherry Bignol, Shane Seefeldt, and DOES 11 through 40 to engage in this conduct and did not stop it upon learning of it. Defendants Cindy Black and DOES 1 through 10 also knowingly refused to terminate

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

10
SECOND AMENDED COMPLAINT FOR DAMAGES

the misconduct of subordinates Sherry Bignol, Shane Seefeldt, and DOES 11 through 40 as alleged herein, despite actual knowledge of the risks associated with failing to appropriately surveil patients and supervise the housing units of the criminally committed. By failing to act to prevent their subordinates from violating Mr. Ocampo's constitutional rights after becoming aware of it, Defendants Cindy Black and DOES 1 through 10 ratified the behavior of Sherry Bignol, Shane Seefeldt, and DOES 11 through 40. Defendants directed, encouraged, and this behavior with deliberate indifference to the fundamental rights individuals have, including decedent, and despite the high likelihood of harm or death to patients as a result.

34.    At all times herein mentioned, Defendants, and each of them, knew that patients, including decedent, were at substantial risk of serious harm if patient rooms and unit doors were not properly secured or surveilled during nighttime hours and if housing units were not properly supervised such that patients could roam the housing unit hallways without supervision or restriction. Without proper housing security during nighttime hours as alleged herein, decedent faced a substantial risk of serious harm which was at all times known to Defendants Cindy Black and DOES 1 through 10. Defendants, as supervising and managerial employees, acted with reckless and deliberate indifference to the rights and safety of Plaintiff. Said Defendants also acted with deliberate indifference to the foreseeable effects and consequences of their subordinates' misconduct with respect to the constitutional rights of decedent and other individuals similarly situated.

35.    The actions of Defendants Cindy Black and DOES 1 through 10 was so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused the injury. Because Defendants had supervisory authority over Sherry Bignol, Shane Seefeldt, and DOES 11 through 40 and knew of the constitutional deprivations they were perpetrating, Defendants could have prevented their subordinates from violating Plaintiff's rights. Had Cindy Black and DOES 1 through 10 stopped, disciplined, or otherwise prevented Sherry Bignol, Shane Seefeldt, and DOES 11

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

11
SECOND AMENDED COMPLAINT FOR DAMAGES

through 40 from leaving patient rooms unsecured, from conducting inadequate safety checks, and from leaving housing units unsupervised, Mr. Ocampo would not have been able to leave his room, roam the hall, and enter the room of another patient undetected. He would not have suffered prior to his death.

36. By reason of Defendants' conduct, and as a direct, legal, and proximate result of the culpability and fault of Defendants, and each of them, decedent Manual Ocampo suffered and sustained the damages as alleged herein.

### THIRD CAUSE OF ACTION
### Survival Action vs. all Defendants

37. Plaintiff realleges each and every paragraph in this complaint as if fully set forth herein.

38. Joseph Ontiveros is the successor in interest to Plaintiff Estate of Manuel Ocampo and brings this action on its behalf.

39. By reason of the Defendants' conduct, and as a direct, legal, and proximate result of the culpability and fault of the Defendants, and each of them, decedent Manual Ocampo incurred general damages for pain, mental suffering, emotional suffering, emotional distress, loss of enjoyment of life, physical impairment, physical inconvenience, grief, anxiety, despair and humiliation before his death.

40. By reason of the Defendants' conduct, Estate of Manuel Ocampo has sustained general (non-economic) damages in a sum in excess of the minimum jurisdictional limits of this court.

WHEREFORE, Plaintiff respectfully requests the following relief against each and every Defendant herein, jointly and severally:

    a. Compensatory damages in an amount according to proof;

    b. All other damages, penalties, costs, and attorneys' fees as permitted by law; and

    c. Such other and further relief as this Court may deem proper.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

12
SECOND AMENDED COMPLAINT FOR DAMAGES

Dated:  March 18, 2026                     WALKUP, MELODIA, KELLY & SCHOENBERGER

By: _____
RICHARD H. SCHOENBERGER
VALERIE N. ROSE
KELLY L. GANCI
Attorneys for Plaintiff

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

13
SECOND AMENDED COMPLAINT FOR DAMAGES

Case 3:25-cv-10935-CRB   Document 16-2   Filed 03/18/26   Page 15 of 15

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial.

Dated:  March 18, 2026                     WALKUP, MELODIA, KELLY & SCHOENBERGER

By: _____
RICHARD H. SCHOENBERGER
VALERIE N. ROSE
KELLY L. GANCI
Attorneys for Plaintiff

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

14

SECOND AMENDED COMPLAINT FOR DAMAGES